IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| TONY R. MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:13-cv-01048-STA-cgc |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Tony R. Morris filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on December 6, 2010. On June 28, 2011, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

1

cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on November 22, 1964. He has a high school education and past relevant work as a welder and material handler. Plaintiff's application alleged disability beginning on May 1, 2008, due to lower back pain, major depression, anxiety, chronic fatigue, and arthritis. Subsequently, Plaintiff amended his alleged onset date to June 30, 2009.

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through September 30, 2011; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: lumbar degenerative disc disease, status post discectomy, major depressive disorder and panic disorder with agoraphobia; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to lift and carry ten pounds occasionally, stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday; Plaintiff is restricted to unskilled work; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged amended onset date; (7) Plaintiff has no transferable skills, but transferability of job skills is not material to the determination of disability because using the Medical-Vocational Guidelines supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[8] The claimant bears the ultimate burden of establishing an entitlement to benefits.[9] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to

---

[8] 42 U.S.C. § 423(d)(1).

[9] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

demonstrate the existence of available employment compatible with the claimant's disability and background.[10]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[11]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[12] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, a substantial number of jobs exists in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ erred by not properly evaluating the medical evidence in the record, especially the opinions of the consultative examiner and independent medical examiner;

---

[10] *Id.*

[11] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[12] 20 C.F.R. § 404.1520(a).

by not providing sufficient reasons for rejecting the psychological evaluation rendered by a licensed psychologist following the hearing; by improperly assessing his mental residual functional capacity; and by relying on the Medical-Vocational Guidelines (the "grids") find that there is other work that he can perform. Plaintiff's arguments are not persuasive.

Weighing of Medical Evidence

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[13] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[14]

Opinions from non-treating sources are not assessed for controlling weight. Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[15] Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[16] and an opinion from a medical source who regularly treats the claimant is afforded more weight

---

[13] 20 C.F.R. § 404.1527(c)(2).

[14] Soc. Sec. Rul. 96–2P.

[15] 20 C.F.R. § 404.1527(c).

[16] 20 C.F.R. § 404.1502, 404.1527(c)(1).

than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[17] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[18]

Although Plaintiff suffers from lumbar degenerative disc disease, status post discectomy, the ALJ concluded that he was able to perform some physical work activities. In reaching this conclusion, the ALJ looked at treatment notes, diagnostic test results, examination findings, and Plaintiff's medication history, as well as the medical opinions in the record. The ALJ noted that, in December 2004, Plaintiff underwent a right L4-5 discectomy to treat a herniated nucleus pulposus.[19] Although Plaintiff subsequently continued to experience pain, an MRI of his lumbar spine performed in February 2007 indicated only a possible scar complex at L4-5, impinging the right L5 nerve root, and a small central disc bulge at L5-S1, with no impingement or stenosis.[20]

On July 9, 2009, Plaintiff reported to Ezekiel Adetunji, M.D., that he was doing fine with Cymbalta and Lyrica.[21] On September 10, 2009, Michael McAdoo, M.D., examined Plaintiff and found non-antalgic gait, normal sensation, and normal motor strength bilaterally; although Plaintiff had lumbar tenderness, lumbar muscle spasm, and limited range of motion, a straight

---

[17] 20 C.F.R. § 404.1502, 404.1527(c)(2).

[18] Soc. Sec. Rul. No. 96–6p.

[19] R. 281.

[20] R. 260, 312.

[21] R. 315.

leg test was negative.[22] Festus Arinze, M.D., reported essentially normal findings in 2009, as did Dr. McAdoo on March 12, 2010.[23]

In assessing Plaintiff's residual functional capacity, the ALJ considered the reports of non-treating consultative examiners Kevin G. Gray, M.D., and Leonard A. Hayden, M.D., and gave their opinions little weight. The ALJ looked at the above cited treatment notes and examination findings when evaluating the reports and opinions of Dr. Gray and Dr. Hayden. Dr. Gray examined Plaintiff on November 23, 2010. Dr. Gray found the musculoskeletal exam unremarkable, other than diffuse low back pain.[24] Dr. Gray further found impaired strength in the lower extremities, but no lumbar spine pain.[25] Dr. Gray filled out an assessment form in which he opined that Plaintiff could occasionally lift and carry, for up to a third of an eight-hour workday, a maximum of less than ten pounds, noted that Plaintiff "appear[ed] to have significant disability with chronic low back pain," and then opined that Plaintiff "would have significant lifting, bending, and twisting restrictions."[26] Dr. Gray also concluded that Plaintiff's "psych meds would impair him on the job and he could not work and take these medicines."[27]

The ALJ gave Dr. Gray's opinion little weight because he examined Plaintiff on only one occasion, and Plaintiff's examination was unremarkable, with the exception of diffuse

---

[22] R. 458-59.

[23] R. 27, 326, 445-47, 456-59.

[24] R. 467-68.

[25] *Id.*

[26] *Id.*

[27] *Id.*

musculoskeletal back pain. The ALJ also considered the fact that Dr. Gray's report did not reflect that Plaintiff stopped working for reasons other than medical ones.

Plaintiff contends that the record does not support the ALJ's statement that he left his job due to economic factors. To the contrary, Plaintiff reported to John D. Brophy, M.D., a treating physician, that five days after he had re-injured his back at work, the plant closed, and he was laid off.[28] Although the July 2009 disability report indicates that Plaintiff went "ahead with the factory layoff early due to [his] condition of extreme pain and depression,"[29] Plaintiff reported to Dennis W. Wilson, Ph.D., a consultative psychological examiner, that he lost his job because the factory closed, not because he was injured and could no longer do the work.[30] Furthermore, while Plaintiff did testify that the plant shut down several months after he was injured in January 2007, he did not testify that he left his job because of an injury.[31]

The ALJ could properly discount Dr. Gray's statement that he was uncertain what could be done to alleviate Plaintiff's chronic low back pain because, at the time of the examination, Plaintiff was only taking over-the-counter medications on an as-needed basis.[32] Dr. Gray's statement that Plaintiff could not work and take his mental health medicine is of limited

---

[28] R. 290-91, 293, 295.

[29] R. 161.

[30] R. 484.

[31] R. 4.

[32] *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729–30 (6th Cir. 2013) ("The ALJ correctly recognized that Dr. Butler's opinion that Rudd could not perform sedentary work conflicted with Rudd's sparse treatment, Rudd's x-rays, and use of over-the-counter medication.")

8

probative value because Dr. Gray did not indicate what kind of work would be affected.[33] Thus, substantial evidence supports the ALJ's determination to give little weight to Dr. Gray's opinion.

The ALJ also discounted Dr. Hayden's report. Dr. Hayden examined Plaintiff three weeks after the hearing. In a medical source statement, Dr. Hayden opined that Plaintiff could frequently lift and carry up to ten pounds and occasionally lift and carry eleven to twenty pounds; he could sit for three hours without interruption for a total of three hours in an eight-hour workday, stand for one hour without interruption for a total of two hours, and walk for one hour without interruption for a total of three hours; he could never operate foot controls because of his sciatica symptoms; he could occasionally climb stairs and ramps, stoop, and crouch, but never climb ladders or scaffolds, balance, kneel, or crawl; and he could perform activities like shopping, travel unassisted, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, and sort, handle, or use paper/files, among other activities.[34]

The ALJ gave Dr. Hayden's opinion little weight because the postural limitations and the restrictions he imposed concerning Plaintiff's ability to sit, stand, and walk during the course of an eight-hour workday were inconsistent, to some degree, with Dr. Hayden's own opinion concerning Plaintiff's ability to perform various daily activities. For example, Dr. Hayden's opinion that Plaintiff could sit for no more than a total of three hours in an eight-hour workday and could never balance or kneel is inconsistent with an individual who can perform the activities listed on the assessment form. Consistency is a factor that must be considered in

---

[33] R. 466-67.

[34] R. 476-81.

deciding what weight to give a medical opinion,[35] and, consequently, substantial evidence supports the ALJ's determination that Dr. Hayden's opinion should be given little weight.

The ALJ explained that the opinion of consultative examiner Dennis W. Wilson, Ph.D.,[36] was entitled to little weight because the minimal mental health evidence, along with Plaintiff's daily activities,[37] supported a finding that Plaintiff had no more than mild limitations in the area of getting along and being with others. The ALJ also noted that, although Dr. Wilson assessed a major depressive disorder with psychotic features and a panic disorder with agoraphobia, Plaintiff had never previously reported any psychotic symptoms or agoraphobia and did not report such symptoms at the hearing.

The ALJ explained that, in spite of expert opinions that Plaintiff had no severe mental impairment, he restricted Plaintiff to unskilled work to give him "the full benefit of the doubt." Because the ALJ followed the procedure set forth in 20 C.F.R. § 404.1520a to evaluate mental impairments and incorporated those findings into his written decision and explained his reasons, his decision is supported by substantial evidence, and substantial evidence supports the weight given to all the medical evidence and opinions in the record.

<u>Mental Residual Functional Capacity Finding</u>

Plaintiff argues that the ALJ improperly ignored his GAF score in determining his mental residual functional capacity. Although the ALJ did not address Plaintiff's GAF score in his

---

[35] *See* 20 C.F.R. § 404.1527(c)(4).

[36] R. 483-89.

[37] Plaintiff's daily activities included socializing with his children, preparing meals, mowing the lawn with a riding mower, shopping, driving, and attending church services three times a week. R. 431.

decision, an ALJ is not required to address every piece of evidence in the record.[38] Nor is it necessary for the ALJ to reference a GAF score in his decision.[39] While a GAF score may be of help to the ALJ in formulating the residual functional capacity finding, the ALJ is not required to use it.[40]

Next, Plaintiff complains that the ALJ erred by failing to provide a function-by-function mental residual functional capacity finding. SSR 96-8p requires the ALJ to individually assess the claimant's exertional and non-exertional capacities. "Although SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, the ALJ is not required to produce a detailed statement in writing. . . . [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."[41]

In making his decision, the ALJ discussed the dearth of mental health evidence and then properly weighed the opinion of Dr. Wilson, as discussed above. The ALJ noted that Plaintiff had sought only occasional mental health treatment for dysthymia and an anxiety disorder prior to his alleged onset date and did not do so after February 2008.[42] Although the failure to seek

---

[38] *See Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 507-08 (6th Cir. 2006). The GAF is a 100 point scale divided into numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32, 34.

[39] *See, e.g., Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that case should be remanded because the ALJ failed to consider her GAF score).

[40] *See Kornecky*, 167 F.App'x at 502 n.7 ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.").

[41] *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002).

[42] R. 252.

medical care "should not be a determinative factor" when the claimant is operating under a mental impairment,[43] in the present case, "there is no evidence suggesting that [Plaintiff's] mental condition somehow hindered him from seeking examination or treatment."[44]

Accordingly, substantial evidence supports the finding of the ALJ as to Plaintiff's mental residual functional capacity.

Use of the Medical-Vocational Guidelines (the "grids")

Plaintiff argues that the ALJ erred by employing the grids because they do not apply when there are significant non-exertional limitations resulting from a mental impairment. At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[45] The Commissioner may carry this burden by applying the grids[46] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[47] If a claimant suffers from non-exertional impairments that preclude his performing a full range of work at a given exertional level, Plaintiff correctly notes that the Commissioner may not reply on the grids alone.[48] However, if the presence of a non-exertional limitation does not significantly limit the range of work a claimant may perform,

---

[43] *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

[44] *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004).

[45] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

[46] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[47] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[48] *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008).

then the Commissioner may rely exclusively on the grids.[49] The mere presence of a mental impairment does not preclude the use of the grids.[50]

The ALJ's residual functional capacity assessment accounts for Plaintiff's mental health issues by limiting him to unskilled work. The limitation to unskilled work had no effect on Plaintiff's ability to perform the full range of sedentary work because all jobs under the grids are unskilled.[51] Grid rules 201.28 and 201.21 satisfied the Commissioner's burden of showing that work exists in significant numbers in the national economy which Plaintiff can perform; therefore, the ALJ was not required to obtain testimony from a vocational expert. The grids provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled within the meaning of the Act.

Because substantial evidence supports the ALJ's determination that Plaintiff was not disabled and the proper rules were followed, the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 18, 2017

---

[49] *Id.*

[50] *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the medical-vocational guidelines.").

[51] *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(b) (stating that "administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels").